IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RONALD HEDLUND,

    Plaintiff,

v.                                                                                              Case No. 3:23-cv-631

MATTHEW MUHLHEIM, et al.

    Defendants.

**MEMORANDUM IN SUPPORT OF
DEFENDANTS MUHLHEIM, SYKES, WRIGHT, TOLBERT, ENZ, AND PIKES'
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**

      Defendants Matthew Muhlheim ("Officer Muhlheim"), Mark Sykes ("Officer Sykes"), Garrison Wright ("Officer Wright"), Nicholas Tolbert ("Officer Tolbert"), Michael Enz ("Officer Enz"), and Anthony Pike ("Chief Pike") (collectively the "Capitol Police Defendants"), by counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), move to dismiss certain claims in the Amended Complaint filed by Plaintiff Ronald Hedlund ("Mr. Hedlund") (ECF No. 6).

      Mr. Hedlund brings this action against the Capitol Police Defendants for alleged violations of his First and Fourth Amendment rights, along with a myriad of state court claims, related to his arrest for criminal trespass outside of the Patrick Henry Building, adjacent to Capitol Square, on January 14, 2022—the day before Governor Glen Youngkin's inauguration.

      The Amended Complaint asserts ten claims against some combination of the eight named defendants. The Court should dismiss the Fourth Amendment claims (Counts I, II, III) against Officers Enz and Tolbert because the Amended Complaint does not allege that they arrested or searched Mr. Hedlund and, therefore, cannot recover against them under § 1983. Additionally, the Court should dismiss Mr. Hedlund's statutory illegal search claim, pursuant to Va. Code § 19.2-

59 (Count IX), against Chief Pike, and Officers Sykes, Tolbert, and Enz because the Amended Complaint does not allege that they conducted any illegal search. Additionally, the Court should dismiss Mr. Hedlund's conspiracy claim, pursuant to 42 U.S.C. § 1985(3), because the Amended Complaint fails to allege any class-based discriminatory intent, and the intracorporate immunity doctrine bars the claim.

## BACKGROUND

### I. Mr. Hedlund's Arrest and Search by Officers Muhlheim and Wright at the Patrick Henry Building on November 14, 2022.

Mr. Hedlund is a well-known figure in the Greater Richmond area for engaging in inflammatory demonstrations intended to draw the attention of the public, including law enforcement. *See* Am. Compl. ¶ 15. According to the Amended Complaint, Mr. Hedlund established his notoriety by publicly displaying what he characterizes as "controversial speech," including "Fuck Joe Biden" signs on overpasses along Interstate I-95. Am. Compl. ¶ 15. Mr. Hedlund claims he engages in displaying lude signs to exercise his First Amendment rights, as well as to "petition the government for a redress of his grievances." Am. Compl. ¶ 15.

Between January 9, 2022 through January 15, 2022, Capitol Square, the park encompassing the Virginia State Capitol, the Senate of Virginia, the House of Delegates, the Executive Mansion, and many monuments paying tribute to famous Virginians, was closed by the Virginia Department of General Services ("DGS") in preparation for Governor Glen Youngkin's inauguration. Am. Compl. ¶¶ 17-18. On January 14, 2022, the day before the inauguration, Mr. Hedlund positioned himself directly beyond Capitol Square between the Patrick Henry Building and 12th Street, "where he believed Governor Northam, as well as others, would see his protest." Am. Compl. ¶¶ 19-20. He carried a sign displaying, on one side the words, "Fuck Governor Coon Face" and, on the other side, a "photograph of an aborted fetus." Am. Compl. ¶ 21.

2

At approximately 9:00 a.m., Officers Tolbert and Enz approached Mr. Hedlund and asked him to not impede any personnel preparing for the inauguration and to stay outside of Capitol Square. Am. Compl. ¶¶ 28-31.[1] A few minutes thereafter, Defendant Clark Mercer, Governor Northam's Chief of Staff ("Mr. Mercer"), approached Mr. Hedlund and took photographs of Mr. Hedlund's demonstration, before leaving the area. Am. Compl. ¶ 33. A few minutes thereafter, Defendant Sandra Gill, the Assistant Director of the DGS ("Ms. Gill"), approached Mr. Hedlund and asked Mr. Hedlund to "leave the property" because he "needed a permit" for his demonstration. Am. Compl. ¶¶ 34-35. Mr. Hedlund refused to leave claiming that he "[had] a permit," but declined to show that permit to Ms. Gill. *Id.* After an exchange, documented by Mr. Hedlund on video, *see* Am. Compl. at Ex. 5, Ms. Gill left the Patrick Henry Building promising to "get the Capitol police," Am. Compl. ¶¶ 35, 37.

Shortly thereafter, Officers Tolbert and Enz returned to Mr. Hedlund. Am. Compl. ¶ 37. Officer Tolbert allegedly demanded that Mr. Hedlund leave the premises and threatened to arrest him for criminal trespass if he did not, due to his sign. Am. Compl. ¶¶ 37, 38. Specifically, Officer Tolbert stated that the "sign's presence" required a permit "through DGS" to be displayed there. Am. Compl. ¶ 39. Mr. Hedlund refused to leave the area or remove his sign and claimed he had a "permit under the Constitution of the United States of America." Am. Compl. ¶ 37. Officers Tolbert and Enz spoke to an unspecified person on their radio and then, informed Mr. Hedlund that he needed a permit to display his sign. Am. Compl. ¶¶ 40-41.

After this exchange, Officers Muhlheim and Wright joined Officers Tolbert and Enz and allegedly handed Mr. Hedlund a copy of "the regulations of Capitol Square," a copy of which are

---

[1] Mr. Hedlund recorded on his cell phone, most of the events alleged in the Amended Complaint. *See, e.g.*, Am. Compl. at Ex. 3.

3

attached to the Amended Complaint as Exhibit 6, and, again asked Mr. Hedlund to relocate away from the Patrick Henry Building. Am. Compl. ¶¶ 42-43. Mr. Hedlund refused to relocate, as requested. Am. Compl. ¶ 49. Accordingly, Officers Muhlheim and Wright arrested Mr. Hedlund for criminal trespass and conducted a search of his person incident to arrest. Am. Compl. ¶¶ 49, 51. Mr. Hedlund further alleges that while handcuffing him, Officer Wright "threw" his cellphone to the ground. Am. Compl. ¶ 50.  Mr. Hedlund concedes that neither Officer Tolbert, nor Officer Enz, arrested or searched him. Am. Compl. ¶ 51.

In the Amended Complaint, Mr. Hedlund contends that his arrest for criminal trespass and searches incident to his arrest were without probable cause because his protest does not trigger the cited DGS regulations, which define an "event," giving rise to the permit requirement, as the assemblance of ten or more persons. Am. Compl. ¶¶ 55-56, Ex. 6.

### II.     Mr. Hedlund Was Charged with Criminal Trespass and Searched by Officer Wright at the City of Richmond Justice Center.

Mr. Hedlund was transported to the City of Richmond Justice Center (the "Jail") by Officers Wright and Enz.  Am. Compl. ¶ 52. Officer Wright charged Mr. Hedlund with criminal trespass, pursuant to Va. Code § 19.2-119, swore out an affidavit supporting the arrest warrant before a magistrate, and allegedly searched Mr. Hedlund at the Jail. Am. Compl. ¶ 52.  Beyond his presence at the Jail and his "failure to intervene," Officer Enz is not alleged to have taken any action in connection with charging Mr. Hedlund or searching him. Am. Compl. ¶¶ 52, 77. Ultimately, on March 14, 2022—approximately two months later—the Commonwealth's Attorney *nolle prossed* the criminal trespass charge. Am. Compl. ¶ 79.

### III.    The Alleged "Conspiracy" to Remove Mr. Hedlund from the Patrick Henry Building on January 14, 2023.

During the Capitol Police Defendants' encounter with Mr. Hedlund outside the Patrick Henry Building, Mr. Hedlund alleges that Mr. Mercer directed Chief Pike and Officer Tolbert to remove Mr. Hedlund from the premises, and, in turn, Chief Pike directed Officers Sykes, Tolbert, Muhlheim, and Wright to carry out Mr. Mercer's directive. Am. Compl. ¶¶ 59-60. Mr. Hedlund purports to allege a conspiracy in the form of internal emails exchanged immediately prior to Officers Muhlheim and Wright arrested Mr. Hedlund. *See* Am. Compl. ¶¶ 64-66.[2]

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted). When considering a motion to dismiss, the court should accept as true all well-pleaded allegations, viewed in a light most favorable to the plaintiff. *Ostrzenski v. Seigel,* 177 F.3d 245, 251 (4th Cir. 1999). However, the court does not accept legal conclusions or conclusory statements. *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).

## ARGUMENT

The Court should dismiss the Fourth Amendment claims (Counts I, II, III) against Officers Enz and Tolbert because the Amended Complaint does not allege that they arrested or searched Mr. Hedlund. The Court should similarly dismiss the state law "illegal search" claim (Count IX) against Officers Sykes, Enz, and Tolbert and Chief Pike because Virginia Code § 19.2-59 only imposes liability on officers that effect an illegal search. Additionally, the Court should dismiss Mr. Hedlund's conspiracy claim, pursuant to 42 U.S.C. § 1985(3), because the Amended

---

[2] Mr. Hedlund also alleges a speculative "cover-up" conspiracy stemming from two meetings held on January 17, 2022 and January 21, 2022—after Mr. Hedlund's arrest. Am. Compl. ¶¶ 81-88. However, neither of these meetings appear to form the basis for Mr. Hedlund's claims against the Capitol Police Defendants. *See generally* Am. Compl.

5

Complaint fails to allege any class-based discriminatory intent, and the intracorporate immunity doctrine bars the claim.

**I.      The Court Should Dismiss the Fourth Amendment Claims (Counts I-III) Against Officers Enz and Tolbert.**

Mr. Hedlund asserts three Fourth Amendment claims against Officers Muhlheim, Wright, Tolbert, and Enz: "unreasonable seizure, illegal arrest" (Count I), "excessive force" (Count II), and "illegal search" (Count III). Specifically, the Amended Complaint alleges that Officers Muhlheim and Wright conducted the arrest (seizure) and subsequent searches incident to arrest (at the Patrick Henry Building and at the Jail). *See* Am. Compl. ¶¶ 49, 51-52. Mr. Hedlund does not contend that Officers Tolbert or Enz searched or seized him; but rather, they could have and should have intervened in Mr. Hedlund's arrest and search. *See, e.g.*, Am. Compl. ¶¶ 111-112, 116-17, 127-28.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. am. IV.  "Under the Fourth Amendment, if supported by probable cause, an officer may make a warrantless arrest of an individual in a public place." *United States v. Humphries,* 372 F.3d 653, 657 (4th Cir. 2004). However, an arrest without probable cause is an unlawful arrest, violative of the Fourth Amendment. *McAfee v. Boczar*, 738 F.3d 81, 87 (4th Cir. 2013). Any use of force to used pursuant to an illegal arrest is excessive force and violates the Fourth Amendment. *Clem v. Corbeau*, 284 F.3d 543, 545-47 (4th Cir. 2022). A person's Fourth Amendment rights may be violated if a person is searched incident to an arrest without probable cause.

"Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *American Mfrs. Mut. Ins.*

*Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). "In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted <u>personally</u> in the deprivation of the plaintiff's rights.'" *Wright v. Collins,* 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (emphasis added)); *Garraghty v. Com. of Va., Dept. of Corrections*, 52 F.3d 1274, 1280 (4th Cir. 1995).

The Amended Complaint alleges that Officers Muhlheim and Wright arrested Mr. Hedlund for criminal trespass and Officer Wright conducted two searches of his person: first at the Patrick Henry Building and then at the Jail. Am. Compl. ¶¶ 49, 51, 59-60. Mr. Hedlund does not contend that either Officer Enz or Tolbert initiated the arrest, search, or "seizure" of Mr. Hedlund. Therefore, neither Officer Enz nor Officer Tolbert is alleged to have acted affirmatively in any deprivation of Mr. Hedlund's Fourth Amendment rights. Accordingly, the Court should dismiss the Fourth Amendment claims against Officers Enz and Tolbert because the Amended Complaint fails to plausibly support a claim that either officer acted personally to violate Mr. Hedlund's Fourth Amendment rights. Counts I, II, and III should be dismissed as to Officers Enz and Tolbert.

**II.     The State Law "Illegal Search" Claim (Count IX) Against Officers Sykes, Enz and Tolbert and Chief Pike Should Be Dismissed.**

Count IX asserts a claim under Virginia Code § 19.2-59 for an illegal search against "all Defendants." Section 19.2-59 provides, in relevant part:

> No officer of the law or any other person shall search any place, thing or person, except by virtue of and under a warrant issued by a proper officer. Any officer or other person searching any place, thing or person otherwise than by virtue of and under a search warrant, shall be guilty of malfeasance in office. Any officer or person violating the provisions of this section shall be liable to any person aggrieved thereby in both compensatory and punitive damages.

"Code § 19.2-59 concerns a 'common law tort that has achieved constitutional dimensions, and the statute specifies the familiar tort law remedy of damages.'" *Cromartie v. Billings*, 298 Va.

7

284, 297 (2020) (quoting *Burnham v. West*, 681 F. Supp. 1169, 1172 (E.D. Va. 1988)). This statute has been "consistently held to provide only the same protects as that afforded by the Fourth Amendment." *Burnham*, 681 F. Supp. at 1173. The Code section does not provide for any form of imputed liability onto officers other than those that engage in a warrantless search.

There is no basis for this claim against Officers Sykes, Enz, Tolbert and Chief Pike because they are not alleged to have searched Mr. Hedlund. In this case, Mr. Hedlund alleges two searches: Officer Muhlheim searched Plaintiff at the spot of arrest and that Officer Wright searched Plaintiff at the Richmond Justice Center Jail. Am. Compl. ¶ 226. He contends that both searches were illegal because the underlying arrest was unlawful. Am. Compl. ¶¶ 226–27.

While Mr. Hedlund alleges that Officers Enz and Tolbert were "present and encouraging" the searches, the Amended Complaint does not allege that they searched him. Am. Compl. ¶ 226. Moreover, the Amended Complaint lacks any allegation how Officer Sykes and Chief Pike may be held liable under Va. Code § 19.2-59. The Court should dismiss Count IX against Officers Sykes, Enz, and Tolbert, and Chief Pike, because neither of them participated in the searches. Code § 19.2-59 provides a right of action against the "officer of the law" that engages in a warrantless search. The Code does not impute liability on officers or persons who were simply "present and encourag[ed] the same by word, action, or deed." *See* Va. Code § 19.2-59.

Accordingly, Count IX must be dismissed as to Officers Sykes, Enz and Tolbert, and Chief Pike.

### III. The Court Should Dismiss the Conspiracy Claim, Under § 1985 (Count V), Against the Capitol Police Defendants.

Count V asserts a conspiracy claim under 42 U.S.C. § 1985(3), asserting that the defendants conspired to violate Plaintiff's Fourth Amendment and First Amendment rights. (Am. Compl. ¶¶ 152, 189.) Specifically, Count V alleges that the defendants conspired "to remove

8

[Plaintiff] from the public areas abutting Capitol Square," and "to retaliate against and censor [Plaintiff] for the particular content of his Sign." (Am. Comp. ¶¶ 155, 162.)

This Court should dismiss Count V for two reasons: (1) the Amended Complaint fails to allege any class-based discriminatory intent, and (2) the intracorporate immunity doctrine bars the claim.

### A. The Amended Complaint Fails to Allege Class-Based Discrimination.

A plaintiff has a "weighty burden" to demonstrate a conspiracy claim under § 1985. *Smith v. Rector & Visitors of Univ. of Virginia*, 115 F. Supp. 2d 680, 688 (W.D. Va. 2000).

> An action under section 1985(3) consists of these essential elements: (1) A conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus, to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985).

"To meet the requirement of a class-based discriminatory animus, under [the second element] the class must possess the "discrete, insular and immutable characteristics comparable to those characterizing classes such as race, national origin and sex." *Id*. The predominant purpose of § 1985(3) was to apply to conspiracies involving discriminatory animus towards race. *Id*. As applied by Courts, "neither the Supreme Court nor the Fourth Circuit has identified any classes other than racial or religious classes." *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985).

Discriminatory animus towards a viewpoint protected by the First Amendment therefore does not satisfy the class-based discrimination element of a § 1985(3) conspiracy claim. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 274 (1993); *Kochan v. Kowalski*, 431 F. Supp. 3d 130, 139–40 (W.D.N.Y. 2019). Indeed, § 1985(3) is not a "a remedy for every concerted effort by one political group to nullify the influence or do injury to a competing group," such as

9

"interfere[nce] with the freedom of speech of another political party." *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 836 (1983).

The Amended Complaint fails to allege that Plaintiff belongs in a protected class or that the defendants were motivated by a class-based discriminatory animus. By its own terms, the defendants discriminated against Plaintiff because of "the particular content of his Sign." (Am. Comp. ¶¶ 162.) Section 1985(3), however, does not permit a conspiracy claim based on viewpoint discrimination. *Bray*, 506 U.S. at 274; *Carpenters*, 463 U.S. at 836; *Kochan*, 431 F. Supp. 3d at 139–40. There is no allegation that defendants discriminated against Plaintiff based on his race. This Court should accordingly dismiss the conspiracy claim in Count V.

**B. The Intracorporate Immunity Doctrine Bars the Conspiracy Claim.**

To assert a conspiracy claim under § 1985, a plaintiff must show that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the plaintiff's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg,* 81 F.3d 416, 421 (4th Cir.1996), *citing Hafner v. Brown,* 983 F.2d 570, 577 (4th Cir.1992). Thus, a threshold element of a conspiracy claim is that "two [or more] persons or entities to have a conspiracy." *Buschi v. Kirven,* 775 F.2d 1240, 1251 (4th Cir. 1985).

An organization or entity, however, "cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the [organization or entity]." *Id*. Thus, where a plaintiff asserts a conspiracy against two agents of the same organization or entity, the intracorporate immunity doctrine bars the conspiracy claim. *Walsh v. Logothetis*, No. 3:13CV401-JAG, 2014 WL 229588, at *12 (E.D. Va. Jan. 21, 2014), *aff'd*, 578 F. App'x 227 (4th Cir. 2014).

10

This immunity doctrine applies to the Commonwealth government entities. *Vollette v. Watson*, 937 F. Supp. 2d 706, 727 (E.D. Va. 2013). In *Walsh v. Logothetis*, for instance, the plaintiff sued the defendants who worked for either a public university or the Commonwealth of Virginia. No. 3:13CV401-JAG, 2014 WL 229588, at *12 (E.D. Va. Jan. 21, 2014), *aff'd*, 578 F. App'x 227 (4th Cir. 2014). This Court held: "all defendants qualify as agents of [the university] and, more broadly, of the Commonwealth, and, therefore, the intracorporate conspiracy doctrine protects them." *Id*.

The intracorporate immunity doctrine bars the conspiracy claim because all Defendants were acting as agents of the Commonwealth. The Amended Complaint alleges that these individuals were all acting under the color of their government agent authority. (*See* Am. Compl. ¶¶ 6–13, 154.) As pled, Defendant Mercer "was employed as-then Governor Ralph Northam's Chief of Staff," and Defendant Gill was the "Assistant Director of the Department of General Services." (Am. Compl. ¶¶ 7–8.) The remaining defendants all worked for the Capitol Police. (Am. Compl. ¶¶ 6, 9–13.)

These three entities—the Office of the Governor, DGS, and Capitol Police—are all Commonwealth entities. DGS is an entity that exists "under the direction and control of the Governor." Va. Code § 2.2-1100(B). Similarly, the Chief of Staff is a direct agent of the Governor. Va. Code § 2.2-100(B). The Capitol Police are supervised and created by the Legislative Support Commission. Va. Code §§ 30-34.2; 30-34.2:1. That Commission is a direct extension of "the legislative branch of state government," and is comprised of members of the General Assembly. Va. Code § 30-34.1. All of the defendants were therefore agents of the Commonwealth.

More importantly, regarding the specific allegations in this case, all of the defendants were acting as agents of the Governor. Mr. Mercer and Ms. Gill were acting on behalf of the Chief of

11

Staff and DGS, which, as noted above, are directly supervised by the Governor. Although the Capitol Police is created and supervised by the General Assembly, the Capitol Police can be "assigned" to the Governor and serve at his or her direction. *See* Va. Code § 30-34.2:1. The allegations demonstrate that the Capitol Police defendants were acting as such. Chief of Staff Mercer, for example, allegedly "called the Chief of the Virginia Capitol Police . . . demanding that [Plaintiff] be removed from the premises." (Am. Compl. ¶ 60.)

Thus, according to the Amended Complaint, every defendant was acting as an agent of the Governor and, more broadly, the Commonwealth. The Governor or the Commonwealth, however, "cannot conspire with itself." *See Buschi,* 775 F.2d at 1251. The intracorporate immunity doctrine therefore bars Plaintiff's conspiracy claim in Count V.

## CONCLUSION

The Court should grant this Motion and dismiss Counts I, II, and III as to Officers Enz and Tolbert, Count V as to all Capitol Police Defendants, and Count IX as to Chief Pike, and Officers Sykes, Enz, and Tolbert.

Respectfully submitted,

MATTHEW MUHLHEIM, MARK SYKES, GARRISON, WRIGHT, NICHOLAS TOLBERT, MICHAEL ENZ, and ANTHONY PIKE

By Counsel

/s/
William W. Tunner, Esq. (VSB No. 38358)
Rachel W. Adams, Esq. (VSB No. 92605)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, VA 23219
Telephone: (804) 649-7545
Fax: (804) 780-1813
Email: wtunner@t-mlaw.com
Email: radams@t-mlaw.com

*Counsel for Defendants Muhlheim, Sykes, Wright, Tolbert, Enz, and Pike*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of December 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following counsel of record:

Jonathan M. Arthur, Esq. (VSB No. 86323)
Thomas H. Roberts, Esq. (VSB No. 26014)
Andrew T. Bodoh, Esq. (VSB No. 80143)
Thomas H. Roberts & Associates, P.C.
105 South 1st Street
Richmond, VA 23219
Telephone: (804) 783-2000
Fax: (804) 783-2105
j.arthur@robertslaw.org
tom.roberts@robertslaw.org
andrew.bodoh@robertslaw.org

*Counsel for Plaintiff*

Melissa Y. York, Esq. (VSB No. 77493)
Brian P. Ettari, Esq. (VSB No. 98800)
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, VA 23255
Telephone: (804) 747-5200
myork@hccw.com
bettari@hccw.com

*Counsel to Defendant Sandra Gill*

Michael R. Shebelskie, Esq. (VSB No. 27459)
Kevin S. Elliker, Esq. (VSB No. 87498)
Alex Brent Chumbley, Esq. (VSB No. 98143)
Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 E. Byrd Street
Richmond, VA 23219
Telephone: (804) 788-8200
mshbelski@HuntonAK.com
kelliker@HuntonAK.com
achumbley@HuntonAK.com

*Counsel to Defendant Clark Mercer*

/s/_____
Rachel W. Adams, Esq. (VSB No. 92605)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, VA 23219
Telephone: (804) 649-7545
Fax: (804) 780-1813
Email: radams@t-mlaw.com

*Counsel for Defendants Muhlheim, Sykes, Wright, Tolbert, Enz, and Pike*

15